**JAN DAVID KAROWSKY**
Attorney at Law
A Professional Corporation
California State Bar Number 53854
716 19th Street, Suite 100
Sacramento, CA 95814
(916) 447-1134
(916) 448-0265 (Fax)

Attorney for Defendant
Juliette Labrecque

## UNITED STATES DISTRICT COURT

## IN AND FOR THE EASTERN DISTIRCT OF CALIFORNIA

| | |
|---|---|
| United States of America, | ) Case No.: Cr.S-03-384-WBS |
| | ) |
| Plaintiff, | ) **JULIETTE LABRECQUE'S** |
| | ) **COMPETENCY HEARING BRIEF** |
| vs. | ) |
| | ) **Date:  March 3, 2006** |
| Juliette Labrecque, et. al., | ) **Time:   9:00 a.m.** |
| | ) **Judge:  Hon. William B. Shubb** |
| Defendant | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

The notion that an incompetent may not stand trial is viewed as fundamental to our adversary system, the policies served include balancing one's right to personal autonomy against the need to protect the dignity of the trial process, accuracy in adjudication, the appearance of justice, and the philosophy of punishment that "retribution seems inappropriate for one who does not understand the reason for his imprisonment." B. Winick, "Restructuring Competence to Stand Trial," 32 U.C.L.A. L. REV. 921, 953-57 (1985).

The doctrine of incompetency has common law origins.  In Youtsey v. U.S., 97 F. 937, 940-46 (6th Cir. 1899), the doctrine received constitutional recognition.  The court held that "[i]t

_____

1

2

is not 'due process of law' to subject an insane person to trial upon an indictment involving liberty or life."

3

4

Gradually, the competency standard expanded from one focusing mainly on cognitive capacity to include the defendant's communicative abilities.  Winick, *Incompetency to Stand Trial:  Developments in the Law*, in Mentally Disordered Offenders:  Perspectives from Law and Social Science 39, 41 (J. Monahan & H. Steadman eds. 1983), note 3, at 3, 5.

5

6

7

The modern formulation of the competency standard, approved by the Supreme Court as a standard for federal cases, is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him."  Dusky v. U.S., 362 U.S. 402 (1960).  The issue of a person's competency to stand trial not only concerns whether the defendant can assist counsel, it also involves whether the defendant is capable of accepting and following, or at least rationally considering, the rational, reasonable and effective assistance offered by competent counsel.

8

9

10

11

12

13

14

15

16

17

In the instant case, the Court has requested briefing on the issue of whether a defendant's inability to give rational consideration to the advice and information provided by counsel constitutes a basis for a finding of incompetence, irrespective of the mental health label given to the defendant's condition.

18

19

20

21

Paul G. Mattiuzzi, Ph.D., has opined that Mrs. Labrecque suffers from a mental disorder, a "Shared Delusional Disorder," which is preventing her from enjoying effective assistance of counsel, in that she lacks the capacity to assist counsel.  Dr. Mattiuzzi's opinion was that it is because of a mental disorder that Mrs. Labrecque has refused to accept a plea bargain wherein

22

23

24

25

1

2

the prosecutor would recommend the bottom of the guideline range, approximately 6 ½ years,

with the defense being allowed to argue for a downward departure.

3

4

5

6

7

The defendant insists on going to trial even though her attorney has informed her it was

his opinion that the evidence against her was overwhelming and she had virtually no chance of

being found not guilty.  (See Declaration of Jan David Karowsky Re: Competency Hearing, filed

January 10, 2005, at 2:4 – 6).

8

9

10

11

12

The defendant indicated to Dr. Watkins, the Bureau of Prisons psychologist, she was

insisting on going to trial even though she would be "… accepting 20 years to life on my

principle….  I would offend God if I don't stand on my religion."  (See report of Michelle Hoy-

Watkins, Psy.D., dated November 1, 2005, filed with the Court, hereinafter "BOP Report," at p.

8).

13

14

15

Dr. Watkins believes Mrs. Labrecque's refusal to accept the rational and reasonable plea

bargain is a result of her personality style.  Dr. Mattiuzzi believes her refusal is based on the fact

she suffers from a legally recognized mental disturbance.

16

17

18

19

20

21

22

23

24

25

Dr. Watkins wrote in her report that Mr. and Mrs. Labrecque "joined the 'Mormon

Jewish faith' in 1984;"  that their "spiritual leader" or "patriarch" was Alan Harrod.  Mrs.

Labrecque told Dr. Watkins that she was unable to provide a clear explanation of the tenets of

their faith; that they believe in the "fundamental beliefs of polygamy, but we don't practice it;"

that "sex can't be abused.  It is for procreation."  Dr. Watkins observed that "[I]t was evident that

what she was able to articulate, she was fed from her patriarch and husband."  Mrs. Labrecque

told Dr. Watkins that there were only four members of their congregation; that all teachings

occurred by phone or at Mr. Harrod's home.  Dr. Watkins further observed that "[I]t was evident

that her role was as a submissive wife and caretaker of her children.  This became even more

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

clear when she described her three co-defendants as her patriarchs and matriarch, but that after 20 years, she had never been assigned such a title.  Instead, she described that she was 'the little man on the totem pole.'"  Mrs. Labrecque admitted to Dr.Watkins that "her husband is her decision maker and that her actions are in accordance with what he advises."  (See BOP report at p. 3).   Mrs. Labrecque said she is unwilling to accept a plea bargain because she does not want to disappoint her husband.  (BOP report at p. 6).

Mrs. Labrecque also told Dr. Watkins that "I am accepting 20 years to life on my principle.  I would offend God if I don't stand on my religion."  Mrs. Labrecque admitted she initially accepted the plea bargain.  However, she said, "Then I thought about it and got straightened out in my thinking….(by her husband and Alan Harrod)."  She explained to Dr. Watkins that "she follows her husband's orders."  "He guides me.  It is hard for me to reason it out.  I want to know if I am doing God's will and he knows God's will."  ((BOP report at p. 8).

Mrs. Labrecque explained her version of the alleged offenses to Dr. Watkins basing her statement "…on her firm religious ideology."  (BOP report at p. 8).  That is, Mrs. Labrecque justified the ritualistic, prolonged, disgusting, degrading, dehumanizing systematic molestation and abuse of over 20 children for over 20 years based on the religious ideology brainwashed and indoctrinated into her by her husband and Alan Harrod.

Dr. Watkins stated that "… while it is apparent that Mrs. Labrecque may have been victimized or perhaps 'brainwashed' at the hands of her husband, 'brainwashing, cult indoctrination, the Stockholm Syndrome, or battered woman's syndrome' do not meet the diagnostic criteria for a severe mental disease or defect."  (BOP report at p. 6).  That is, Dr. Watkins' opinion is that Mrs. Labrecque is competent to stand trial because she does not suffer from a "mental disease or defect."

_____

1

2      Dr. Watkins diagnoses Mrs. Labrecque's condition as "Dependent Personality Disorder."

3  Therefore, Dr. Watkins believes Mrs. Labrecque is competent to stand trial because Mrs.

4  Labrecque's condition does not qualify under 18 U.S.C. 4241's requirement of being a "mental

   disease or defect."

5
        In U.S. v. Murdoch 98 F.3d 472 (9th Cir. 1996), the Court addressed the question of

6  whether a "personality disorder" could constitute a mental disease or defect.  Although the

7  statutory scheme involved 18 U.S.C. § 4243, a risk assessment pursuant to a finding of not guilty

8
   by reason of insanity, the Court's analysis applies with equal force in the instant context.  The

9  Court held that a personality disorder, in defendant Murdoch's case, a personality disorder not

10  otherwise specified with passive/aggressive and narcissistic tendencies, was a mental disease or

11  defect within the meaning of 18 U.S.C. § 4243.  (Id. at 477).

12
        Judge Wilson, in his concurring opinion, pointed out that:

13
        There is little guidance as to when a psychiatric condition falls within the scope of

14      § 4243's mental disease or defect. The courts have expressed reluctance in relying
        on medical categories and labels in determining the limits of legal insanity.
15      (Internal citations omitted).  Such reluctance is warranted. "What definition of
        'mental disease or defect' is to be employed by courts enforcing the criminal law
16      is, in the final analysis, a question of legal, moral and policy - not of medical -
        judgment. Among the most basic purposes of the criminal law is that of
17      preventing a person from injuring others or, perhaps to a lesser degree, himself.
        This purpose and others appropriate to law enforcement are not necessarily served
18      by an uncritical application of definitions developed with medical considerations
        of diagnosis and treatment foremost in mind." (Internal citation omitted).  Thus,
19      it is not enough that Appellant suffers from a condition to which a psychiatric
        label has been attached. Likewise, it is of no significance that one witness, Dr.
20      Saint Martin, testified that a personality disorder is not considered a mental
        disease or defect in the psychiatric literature.
21

22

23
        Regarding the definition of mental defect that is to be employed, Dr. Mattiuzzi made a

24  similar observation, writing:  "There is no medical science that can resolve this dispute.  The

25

_____

Competency Hearing Brief                              U.S. v. Juliette Labrecque Cr.S-03-484-WBS

1

2

Court must decide if the signs we have observed simply represent personality style, or whether they describe a legally recognized disturbance." (Report dated January 6th, 2006, page 2).

3

4

5

6

7

8

9

Judge Wilson went on to conclude that "… mere personality quirks or characteristics cannot be construed as mental diseases or defects…. I conclude that a personality disorder such as that suffered by Appellant is much more than a mere quirk. It is a systemic, enduring, and severe condition resulting in an extremely abnormal perception of and reaction to everyday events. In short, Appellant's condition is so encompassing and impairing that it rises to the level of a disease or defect." (Id. at 479).

10

11

12

13

14

15

Similarly, with Juliette Labrecque, her Dependent Personality Disorder is much more than a mere quirk. It, too, is a systemic, enduring, and severe condition resulting in an extremely abnormal perception of and reaction to everyday events, including, now, her inability to think independently, rationally, and do what is clearly in her best self interest. In short, Mrs. Labrecque's condition is so encompassing and impairing that it rises to the level of a disease or defect.

16

17

18

19

20

21

22

Mrs. Labrecque's disorder not only includes the belief that the ritualistic, prolonged, disgusting, degrading, dehumanizing, systematic molestation and abuse of over 20 children for over 20 years based on the religious ideology brainwashed and indoctrinated into her by her husband and Alan Harrod is God's will, it also involves both her husband and Harrod preventing her from independently thinking for herself and accepting an exceptionally favorable plea bargain, convincing her that God (her two "patriarchs") is in control of her fate.

23

24

25

It should make no difference to the Court in determining whether Juliette Labrecque is incompetent to stand trial what label is placed on her condition. Clearly, whether it is a personality disorder or a mental disease or defect, both Dr. Mattiuzzi and Dr. Watkins believe it

1   is not a mere personality quirk, but rather a systemic, enduring, and severe condition resulting in

2   an extremely abnormal perception of and reaction to everyday events.

3        In United States v. Friedman, 366 F.3d 975 (9th Cir. 2004), a case handled by Your

4   Honor and subsequently, by counsel for Mrs. Labrecque, this Court found that because of a

5   mental disease or defect, Mr. Friedman "understood the nature of the proceedings against him,

6   but also found that 'because of his mental disease the defendant refuses to assist rationally or

7   properly in his defense.'"  Id. at 980.

8        The Ninth Circuit Court of Appeals concluded:

9

10       In a real and important sense, Friedman's paranoid schizophrenia is preventing
         him from working with his attorney, rendering him 'unable' to 'assist properly in
11       his defense' within the meaning of § 4241(d). Cf. Dusky v. United States, 362
         U.S. 402, 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960) (holding that the proper test
12       of competency to assist in one's defense is whether the defendant has 'sufficient
         present ability to consult with his lawyer with a reasonable degree of rational
13       understanding'). Id. at 981.

14

15       Similarly, Juliette Labrecque's Shared Delusion and/or her Dependent Personality

16   Disorder is preventing her from working with her attorney in way that would reasonably and

17   rationally allow her to enjoy the constitutional mandate of due process through the effective

18   assistance of counsel.  The Sixth Amendment's mandate for "the assistance of counsel for his

19   defense" is not fulfilled unless the client is mentally capable of rationally and reasonably

20   understanding and appropriately accepting and following, or at least rationally considering, the

21   advice and counsel of her attorney.

22       In U. S. v. Salley, 246 F. Supp. 2d 970, 977 (D. Ill. 2003), the Court observed that:

23

24
         Cooperation with counsel has been described as 'the capacity to provide whatever
25       assistance counsel requires in order to explore and present an adequate defense.'
         R. Bonnie, "The Competence of Criminal Defendants: Beyond Dusky and

1

2

3

4

Drope," 47 U. MIAMI L. REV. 539, 552 (1993) n6 see also, Dusky, 362 U.S. at 402. Components of such capacity necessarily include … that of understanding the nature and possible consequences of the proceeding. In relation to cooperation with counsel, these capacities are put to the test, particularly when defendant is faced with choices whether to waive constitutional rights, such as to waive the right to counsel, to plead guilty or go to trial, to waive a jury, to cross-examine witnesses, and to testify in his own defense.

5

6

7

Although the decision to enter a plea of guilty and waive one's constitutional rights rests

with the defendant and not the attorney, the exercise of that constitutional right is predicated on

8

9

the fact that the defendant is competent to understand, appreciate, and exercise that right in a

rational fashion, in her best interests.

10

11

In fact, when a defendant chooses to exercise her constitutional right to plead guilty, the

Rule 11 plea colloquy normally includes a question by the Court to the defense attorney as to

12

13

whether he believes the plea to be in the best interests of the client.  Further, the Rule 11

colloquy normally includes the Court making a finding that the defendant is fully competent and

14

15

capable of entering an informed plea and that her plea of guilty is a knowing and voluntary plea.

16

In the instant case, the defendant's refusal to exercise her constitutional right to plead

17

guilty should be looked at in a reverse angle view from that of a guilty plea.  Juliette Labrecque's

18

refusal to exercise her right to plead guilty because of her mental condition is **not** in her best

19

interests.  Her refusal to exercise her constitutional rights is based on the fact that her mental

20

condition **prevents** her from being capable of deciding to plead guilty.  Her refusal is neither a

21

knowing nor a voluntary refusal.  It is a refusal to exercise her fundamental constitutional right

22

based on her inability to shake off the mental yoke so carefully and insidiously placed there by

23

her husband and Alan Harrod.

24

If Juliette Labrecque told the psychologists that the Martians, the F.B.I., or the C.I.A.

25

were refusing to allow her to accept a favorable plea agreement and she was diagnosed with a

_____

Competency Hearing Brief                                                      U.S. v. Juliette Labrecque Cr.S-03-484-WBS

1   mental disease or disorder, as now, the Court would not hesitate to declare her incompetent.

2   There is no difference between the prior example and Mrs. Labrecque's condition.  Because of

3   her shared delusion and/or dependent personality disorder, her husband and Alan Harrod have

4   been able to get away with substituting God as their basis for preventing her from doing what is

5   clearly in her best interests.

6        Mrs. Labrecque is legally incompetent and should be so declared.

7   Dated:  January 27, 2006                    Respectfully submitted

8
                                             **Jan David Karowsky**
9                                            Attorney at Law
                                             A Professional Corporation
10

11                                           /s/   Jan David Karowsky

12                                           By: Jan David Karowsky
                                             Attorney for Juliette Labrecque
13

14

15

16

17

18

19

20

21

22

23

24

25