1  McGREGOR W. SCOTT
   United States Attorney
2  LAUREL D. WHITE
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2780



**FILED**

FEB 1 7 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                DEPUTY CLERK

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,     )    CR. S-03-00384-WBS
                                  )
12            Plaintiff,          )
          v.                      )
13                                )    PLEA AGREEMENT
    IRENE HUNT,                   )
14       aka Irene Harrod         )
         aka Rebekah,             )
15                                )    Date: February 17, 2006
              Defendant.          )    Time: 9:00 a.m.
16  _____)    Judge: Hon. William B.  Shubb

17                            I.

18                       **INTRODUCTION**

19       **A.   Scope of Agreement:**   Plaintiff United States of

20  America, by and through Assistant United States Attorney Laurel

21  White, and defendant IRENE HUNT, (hereafter "HUNT") by and

22  through her attorney, Peter Kmeto, stipulate to entry of this

23  plea agreement reached after negotiations pursuant to Federal

24  Rules of Criminal Procedure (hereafter "FRCP") 11 and 32.    This

25  document contains the complete plea agreement between the United

26  States Attorney's Offices for the Eastern District of California

27  and HUNT, by and through the advice of her counsel, Peter Kmeto.

28  This plea agreement is limited to the United States Attorney's

                              1

1 Office for the Eastern District of California and cannot bind any
2 other federal, state or local prosecuting, administrative or
3 regulatory authorities.

4     **B.**   **Court Not a Party:**   The Defendant understands that the
5 Court is not a party to this Plea Agreement. Sentencing is a
6 matter solely within the discretion of the Court. The Court is
7 under no obligation to accept any recommendations made by the
8 government, and the Court may in its discretion impose any
9 sentence it deems appropriate up to and including the statutory
10 maximum stated in this Plea Agreement. If the Court should
11 impose any sentence up to the maximum established by the statute,
12 the defendant cannot, for that reason alone, withdraw her guilty
13 plea, and she will remain bound to fulfill all of the obligations
14 under this Agreement. The defendant understands that neither the
15 prosecutor, defense counsel, nor the Court can make a binding
16 prediction or promise regarding the sentence she will receive.

17     **C.**   **Elements:**   In order to find the defendant guilty of
18 18 U.S.C. § 2251A(a) - transferring custody of a minor for the
19 purpose of producing visual depictions of that minor engaged in
20 sexually explicit conduct, the government would be required to
21 prove beyond a reasonable doubt that: 1) the defendant was a
22 parent or legal guardian having custody of a minor child
23 identified as  Victim 3; 2) that the defendant did transfer
24 custody of the minor child, Victim 3 to another person; 3) that
25 the defendant transferred such custody knowing that the minor
26 child would be portrayed in a visual depiction engaging in, or
27 assisting another person to engage in sexually explicit conduct.
28

2

1    Additionally, the government must prove beyond a reasonable
2  doubt that in the course of the conduct alleged, the minor child
3  or the actor traveled in or was transported in interstate of
4  foreign commerce.[1]

5    Sexually explicit conduct means actual or simulated -
6  (A) sexual intercourse, including genital-genital, oral genital,
7  anal genital, or oral-anal, whether between persons of the same
8  or opposite sex; (B) bestiality; (C) masturbation; (D) sadistic
9  or masochistic abuse; or (E) lascivious exhibition of the
10  genitals or pubic area of any person.   18 U.S.C. § 2256.

11                              II.

12                  **DEFENDANT'S OBLIGATIONS**

13    **A.  Guilty Pleas:**   The defendant agrees to plead guilty to
14  Count Two of Indictment Cr-S-03-00384-WBS, which  alleges a
15  violation of 18 U.S.C. §§ 2252A(a)(1) and 2.   The defendant
16  specifically agrees that no threats have been made against her
17  and that she is pleading guilty freely and voluntarily.   The
18  defendant further agrees there is a factual basis to her guilty
19  plea and stipulates that the Factual Basis, identified as Exhibit
20  A and appended to this plea agreement, is true.   Defendant
21  further agrees that the following facts are true:

22

23
24  [1]In this case, the government contends Irene Hunt was the
    principal.   However, because the charge also alleges aiding and
    abetting the government will set forth the elements of aiding and
25  abetting.   In order to prove a defendant guilty of aiding and
    abetting, the government must prove beyond a reasonable doubt:
26  First, that the crime alleged (18 U.S.C. § 2251A(a)), was
    committed by someone; Second, that the defendant knowingly and
27  intentionally aided, counseled, commanded, induced, or procured
    that person to commit the crime charged; and Third, that the
28  defendant acted before the crime was completed.

                              3

(a) That in July, 1991, IRENE HUNT and her 7 year old son, identified as Victim 3, traveled by airplane from Sacramento, State and Eastern District of California, to Fort Worth, State and Northern District of Texas;

(b) HUNT further stipulates that:

  (i) one of the purposes of the trip was to transport her 7-year old son, identified as Victim 3, to Texas so that he could live with Michael and Juliette Labrecque and their family in Texas.

  (ii) one of the purposes of placing Victim 3 in the Labrecque's household was so that he could be homeschooled by the Labrecques;

  (iii) another purpose of Victim 3's travel to Texas was to photograph him with Juliette Labrecque, engaged in sexually explicit conduct.

  (iv) among the possessions HUNT brought with her from California to Texas, was a Polaroid camera that belonged to her and Allen Harrod;

  (v) shortly after their arrival at the Labrecque's Texas home, IRENE HUNT took photographs of her son Victim 3 simulating sexually explicit conduct with Juliette Labrecque; and that

  (vi) Allen Harrod instructed her to take the pictures of Victim 3 and Juliette Labrecque in sexual poses, and to give the photos to Michael Labrecque, which she did.

**B.** **Sentencing Agreements:** The government will recommend that the defendant be sentenced to 20 years, which represents the mandatory minimum sentence for the offense. The defendant agrees she will not seek a downward departure below the 20-year

4

1 mandatory minimum.[2]    The government will recommend that no fine
2 be imposed, in light of restitution that should be imposed and
3 because the defendant lacks the present or future ability to pay
4 a fine.    Defendant understands she must pay a special
5 assessment of $100.

6      The Mandatory Victim Restitution Act requires the Court to
7 order restitution to the victim of certain crimes.    Restitution
8 payments shall be by cashier's or certified check made payable to
9 the Clerk of the Court.  Further restitution payments shall be
10 made according to a schedule determined by the probation officer.
11 Defendant agrees that she will not seek to discharge any
12 restitution obligation or any part of such obligation in any
13 bankruptcy proceeding.

14      HUNT  understands and agrees that as a consequence of her
15 conviction for the crime to which she is pleading guilty, she
16 will be required to register as a sex offender pursuant to 18
17 U.S.C. § 3563(a)(8) and the laws of the state of her residence.

18      C.  **Agreement to Cooperate**:  The defendant agrees to
19 cooperate fully with the government and any other federal, state,
20 or local law enforcement agency, as directed by the government.

21

22

23 [2]In the event the defendant provides substantial assistance
to the government, the government will move for a reduction in her
sentence pursuant to Rule 35 of the Federal Rules of Criminal
24 Procedure, or under U.S.S.G. § 5K1.1.    The level of departure
will depend upon the amount of time the defendant has remaining of
25 her state sentence.    It is the intent of the parties that the
defendant's federal sentence run concurrently with her state
26 sentence in criminal case 01F09222. The state case was prosecuted
by the Sacramento County District Attorney.
27

28

5

1  As used in this Agreement, "cooperation" requires the defendant:
2  (1) to respond truthfully and completely to all questions,
3  whether in interviews, in correspondence, telephone
4  conversations, before a grand jury, or at any trial or other
5  court proceeding; (2) to attend all meetings, grand jury
6  sessions, trials, and other proceedings at which the defendant's
7  presence is requested by the government or compelled by subpoena
8  or court order; (3) to produce voluntarily any and all documents,
9  records, or other tangible evidence requested by the government;
10 (4) not to participate in any criminal activity while cooperating
11 with the government; and (5) to disclose to the government the
12 existence and status of all money, property, or assets, of any
13 kind, derived from or acquired as a result of, or used to
14 facilitate the commission of, the defendant's illegal activities
15 or the illegal activities of any conspirators.

16      If the defendant commits any crimes or if any of the
17 defendant's statements or testimony prove to be knowingly false,
18 misleading, or materially incomplete, or if the defendant
19 otherwise violates this Plea Agreement in any way, the government
20 will no longer be bound by its representations to the defendant
21 concerning the limits on criminal prosecution and sentencing as
22 set forth herein.  The determination whether the defendant has
23 violated the Plea Agreement will be under a probable cause
24 standard.  If the defendant violates the Plea Agreement, she
25 shall thereafter be subject to prosecution for any federal
26 criminal violation of which the government has knowledge,
27 including but not limited to perjury, false statements, and
28 obstruction of justice.  Because disclosures pursuant to this

6

1 Agreement will constitute a waiver of the Fifth Amendment
2 privilege against compulsory self-incrimination, any such
3 prosecution may be premised on statements and/or information
4 provided by the defendant.  Moreover, any prosecutions that are
5 not time-barred by the applicable statute of limitations as of
6 the date of this Agreement may be commenced in accordance with
7 this paragraph, notwithstanding the expiration of the statute of
8 limitations between the signing of this Agreement and the
9 commencement of any such prosecutions.  The defendant agrees to
10 waive all defenses based on the statute of limitations or delay
11 of prosecution with respect to any prosecutions that are not
12 time-barred as of the date of this Agreement.

13     If it is determined that the defendant has violated any
14 provision of this Agreement or if the defendant successfully
15 moves to withdraw her plea:  (1) all statements made by the
16 defendant to the government or other designated law enforcement
17 agents, or any testimony given by the defendant before a grand
18 jury or other tribunal, whether before or after this Agreement,
19 shall be admissible in evidence in any criminal, civil, or
20 administrative proceedings hereafter brought against the
21 defendant; and (2) the defendant shall assert no claim under the
22 United States Constitution, any statute, Rule 11(e)(6) of the
23 Federal Rules of Criminal Procedure, Rule 410 of the Federal
24 Rules of Evidence, or any other federal rule, that statements
25 made by the defendant before or after this Agreement, or any
26 leads derived therefrom, should be suppressed.  By signing this
27 Agreement, the defendant waives any and all rights in the
28 foregoing respects.

7

1

**III.**

2

**THE GOVERNMENT'S OBLIGATIONS**

3

**A.    Recommendations:**

4        **1.  Dismissals and Charges:** In return for the
5   defendant's promise to plead guilty as set forth in this plea
6   agreement, the United States Attorney's Office for the Eastern
7   District of California, agrees to dismiss the remaining counts of
8   the indictment against her following her sentencing.

9        **2.  Incarceration Range:**  The parties stipulate that
10  the defendant's sentencing guideline range is to be calculated
11  pursuant to  U.S.S.G. §§ 2G2.3.   The parties acknowledge that
12  the sentencing guideline range calculated in HUNT's case is
13  advisory; that the district court, while not bound to apply the
14  Guidelines, must consult the Guidelines and take them into
15  account when sentencing.  United States v. Booker, 2005 WL 50108,
16  at 27 (Jan. 12, 2005).

17        **3.  Acceptance of Responsibility:**  The government
18  agrees to recommend that defendant receive a two-level downward
19  adjustment in her offense level for acceptance of responsibility,
20  in accordance with U.S.S.G. § 3E1.1(a).  The government's
21  recommendation is contingent upon defendant's truthful
22  acknowledgment of the facts of her crimes and her cooperation
23  with the Probation Office during the sentencing process, and her
24  ongoing demonstration of remorse and a showing she fully and
25  clearly accepts responsibility for her criminal conduct.  The
26  government will not recommend that defendant's offense level be
27  further reduced under U.S.S.G. § 3E1.1(b), because the government
28  has already begun to prepare for trial, due to the complexity of

8

1 | the case.

2 | **IV.**

3 | **MAXIMUM SENTENCE**

4 | **A.  Maximum Penalty:**  HUNT  understands that the penalty
5 | for a violation of 18 U.S.C. § 2251A(a)(1) and 2, as alleged in
6 | count two, is a 20-year mandatory minimum, to life term of
7 | imprisonment, a $250,000 fine, a 5-year term of supervised
8 | release, and a special assessment of $100.

9 | **B.  Supervised Release:**  The defendant understands and
10 | agrees that if she violates a condition of supervised release at
11 | any time during the term of supervised release, the Court may
12 | revoke the term of supervised release and require the defendant
13 | to serve up to 5 additional years imprisonment.

14 | **V.**

15 | **SENTENCING DETERMINATION**

16 | **A.  Statutory Authority:**  HUNT understands that the Court
17 | must consult the Federal Sentencing Guidelines (as promulgated by
18 | the Sentencing Commission pursuant to the Sentencing Reform Act
19 | of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as
20 | modified by United States v. Booker and United States v. Fanfan,
21 | 2005 WL 50108 (Jan. 12, 2005)), and must take them into account
22 | when determining a final sentence.  Defendant understands that
23 | the Court will determine a non-binding and advisory guideline
24 | sentencing range for this case pursuant to the Sentencing
25 | Guidelines.  Defendant further understands that the Court will
26 | consider whether there is a basis for departure from the
27 | guideline sentencing range (either above or below the guideline
28 | sentencing range) because there exists an aggravating or

9

1 mitigating circumstance of a kind, or to a degree, not adequately
2 taken into consideration by the Sentencing Commission in
3 formulating the Guidelines.   Defendant further understands that
4 the Court, after consultation and consideration of the Sentencing
5 Guidelines, must impose a sentence that is reasonable in light of
6 the factors set forth in 18 U.S.C. § 3553(a).

7     By this plea agreement, the parties stipulate that the Court
8 refer this matter -- prior to judgment and sentencing -- to the
9 U.S. Probation Office for a full presentence report.  The parties
10 agree to be bound by the terms of this plea agreement even though
11 a full presentence report will be generated and even if such a
12 full presentence report contains a recommendation other than the
13 stipulated adjusted offense level herein.   Each party retains
14 the right to provide to the federal sentencing court and the
15 appropriate probation office all information regarding the facts
16 concerning Count 2, about HUNT, and about the applicable law.

17     **B.  Stipulations Affecting Guidelines Calculation:**  The
18 government and the defendant agree that there is no material
19 dispute as to the following sentencing guideline variables and
20 therefore stipulate to the following:

21          **Base Offense Level:**

22     The guideline for a violation of 18 USC § 2251A(a)(1) is
23 found at  USSG § 2G2.3 - Selling or Buying Children for Use in
24 the Production of Pornography.

25     **1.  Base Offense Level:** Pursuant to § 2G2.3 (a) the base
26 offense level is 38.

27     **2.  Acceptance of Responsibility:**  HUNT understands that, to
28 be eligible for the two-level reduction in offense level for

10

1   acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), she
2   must cooperate fully with the probation officer,  provide
3   truthful information to the U.S. Probation Office for purposes of
4   preparing a presentence report, express remorse for her crime,
5   admit to the factual elements necessary to support her conviction
6   as charged, and commit no crimes before judgment and sentencing.

7       Absent such a showing of remorse and demonstration of
8   cooperation with the probation officer, the government will not
9   recommend the acceptance of responsibility reduction.

10      **3.  Criminal History:** The parties do not stipulate to the
11  defendant's criminal history.

12      **4.  Departures:** The government agrees not to seek an upward
13  departure from the guideline range.   In the event the defendant
14  provides substantial assistance to the government pursuant to
15  U.S.S.G. § 5K1.1, the government will move for a downward
16  departure, but only to the extent of her unserved state
17  sentence.[3]

18  ///

19

20
    [3]In the state prosecution, the defendant was sentenced to 20
21  years and 8 months in state prison.   As of February 1, 2006, she
    will have served approximately 3 years in state custody.   If she
22  were to receive credit for time served, she has approximately 17
    years, 2 months left to serve of her state sentence.   In
23  determining the extent of departure, the government will ask the
    court to depart downward only to the extent that her resulting
24  federal sentence is the equivalent of the amount of time she has
    remaining of her state sentence.   The parties believe that will
25  be about 15 years, 6 months.   As part of this agreement, the
    defendant also agrees to withdraw her state appeal and agrees not to
26  collaterally attack her state or federal conviction.   Defendant
    must document the withdrawal of her state appeal at the time of
27  her federal sentencing.   Upon defendant's withdrawal of her state
    appeal, the government will ask the court to impose a federal
28  sentence that runs concurrently with her state sentence.

                                11

1    **5. Resulting Offense Level:**   36.   This assumes she
2  receives two points off of the total offense level of 38 for
3  acceptance of responsibility.

4                              **VI.**

5                             **WAIVERS**

6    **A.   Advisement and Waiver of Rights:** HUNT agrees that she
7  has been advised by her attorney of her rights under Rule 11 of
8  the Federal Rules of Criminal Procedure and she fully understands
9  those rights and is completely satisfied with her attorney's
10 representation.   HUNT agrees that she has been advised by her
11 attorney regarding her constitutional rights and acknowledges
12 that her Fifth Amendment rights have not been violated by any
13 statements made by her at any time in this case.

14    HUNT expressly recognizes that she has the following rights,
15 summarily listed herein, that have been fully explained to her by
16 her attorney:

17       (a)   The right to plead not guilty and persist in that plea.
18       (b)   The right to a speedy and public jury trial.
19       (c)   The right to assistance of counsel at all proceedings
20       including trial and appeal.
21       (d)   The right to remain silent at trial.
22       (e)   The right to testify at trial.
23       (f)   The right to confront and cross-examine witnesses.
24       (g)   The right to present evidence and witnesses.
25       (h)   The right to compulsory process of the court.
26       (i)   The right to be presumed innocent.
27       (j)   The right to a unanimous guilty verdict.
28       (k)   The right to appeal a guilty verdict.

                              12

1    HUNT further understands that she waives each and every one
2  of the rights (except as to counsel) identified herein by
3  pleading guilty pursuant to this plea agreement, and it is her
4  knowing and voluntary intention to do so.   Also, HUNT
5  acknowledges that if her guilty plea is accepted, then there will
6  not be a trial of any kind.

7    **B. Wavier of Appeal and Collateral Attack:** The defendant
8  understands that the law gives her a right to appeal her
9  conviction and sentence.  HUNT agrees to waive all rights to
10  appeal her guilty plea and the sufficiency of the evidence
11  against her and to attack collaterally her guilty plea and the
12  sufficiency of the evidence against her, pursuant to 18 U.S.C. §
13  3742, 28 U.S.C. §§ 2255 and 2241.  Further, HUNT agrees to waive
14  all rights to appeal and attack collaterally any aspect of her
15  sentence pursuant to 18 U.S.C. § 3742, 28 U.S.C. §§ 2255 and
16  2241, to the extent she is sentenced to no more than 240 months
17  imprisonment.    If the defendant's conviction is ever vacated at
18  the defendant's request, or her sentence is ever reduced at her
19  request, the government shall have the right (1) to prosecute the
20  defendant on any of the counts to which she pleaded guilty; and
21  (2) to file any new charges that would otherwise be barred by
22  this agreement.    The decision to pursue any or all of these
23  options is solely in the discretion of the United States
24  Attorney's Office. By signing this agreement, the defendant
25  agrees to waive any objections, motions, and defenses she might
26  have to the government's decision to re-file such charges.   In
27  particular, she agrees not to raise any objections based on the
28  passage of time with respect to such counts including, but not

13

1  limited to, any statutes of limitation or any objections based on
2  the Speedy Trial Act or the Speedy Trial Clause of the Sixth
3  Amendment.

4      In return for the government's  pledge to recommend that the
5  defendant's sentence run concurrently with her state sentence,
6  the defendant also agrees to withdraw her pending state appeal,
7  and not seek any direct appeal, or habeas petition in her state
8  case.   Failure to withdraw her state appeal prior to her
9  sentencing on the federal case shall relieve the government of
10 it's obligation to recommend a concurrent sentence.[4]

11     **C.  Waiver of Attorney's Fees and Costs:**   HUNT agrees to
12 waive all rights under the "Hyde Amendment," P.L. 105-119 § 627
13 (Nov. 26, 1997), to recover attorneys' fees or other litigation
14 expenses in connection with this investigation and prosecution
15 (including without limitation any charge to be dismissed pursuant
16 to this plea agreement and any related allegations or
17 statements).

18     **D.  Other Considerations:**

19     In signing this plea agreement, HUNT and her attorney agree
20 that HUNT is not under the influence of any drug, medication,
21 liquor, intoxicant or depressant, and that HUNT is fully capable
22 of understanding the terms and conditions of this plea agreement.
23     The parties agree to be bound by the U.S.S.G. provisions
24 that were in effect at the time her offense was committed.
25 ///
26

27 [4]The defendant shall provide the government written
documentation of her notice to withdraw her pending appeal, prior
28 to her sentencing in federal court.

14

1 | **VII.**

2 | **ENTIRE PLEA AGREEMENT**

3 |     Other than this Plea Agreement, no agreement, understanding,
4 | promise, or condition between the government and the defendant
5 | exists, nor will such agreement, understanding, promise, or
6 | condition exist unless it is committed to writing and signed by
7 | the defendant, counsel for the defendant, and counsel for the
8 | United States.

9 | **VIII.**

10 | **APPROVALS AND SIGNATURES**

11 |     The undersigned Assistant United States Attorney hereby
12 | accepts and agrees to this plea agreement for the United States.

13 |

14 | DATED: *2-17-06*           McGREGOR W. SCOTT
                                United States Attorney

15 |

16 |

17 |                          By:                       
                              LAUREL D. WHITE
                              Assistant U.S. Attorney

18 |

19 |     I, IRENE HUNT, have consulted with my attorney and I fully
20 | understand all my rights, including those rights contained in
21 | FRCP 11 and my constitutional rights, with respect to the offense
22 | charged by the indictment against me. I have read this plea
23 | agreement and I have carefully reviewed every part of it with my
24 | attorney. I have read the Indictment and carefully reviewed it
25 | with my attorney. I understand the nature of the charges
26 | against me. By signing below, I signify that I understand the
27 | plea agreement and I voluntarily and willfully agree to it's
28 | terms. I understand there are no other terms or oral

15

1 agreements, other than what is contained in this written plea
2 agreement.  I specifically  acknowledge that the plea agreement
3 contains a waiver of appeal rights.  I acknowledge that I have
4 agreed  to waive all rights to appeal my guilty plea and the
5 sufficiency of the evidence against me and to attack collaterally
6 my guilty plea and the sufficiency of the evidence against me,
7 pursuant to 18 U.S.C. § 3742, 28 U.S.C. §§ 2255 and 2241.  I also
8 agree to waive all rights to appeal and attack collaterally any
9 aspect of my sentence pursuant to 18 U.S.C. § 3742, 28 U.S.C. §§
10 2255 and 2241, to the extent I am sentenced to no more than 240
11 months imprisonment.  In addition, no one has threatened or
12 forced me in any way to enter into this Plea Agreement.
13 Finally, I am satisfied with the representation of my attorney in
14 this case.
15 DATED:   2/17/06

IRENE HUNT
16 Defendant

17      I, Peter Kmeto, am IRENE HUNT's attorney.  I have read this
18 Plea Agreement and have discussed it fully with my client.   The
19 Plea Agreement accurately and completely sets forth the entirety
20 of her agreement with the government.  I have fully explained to
21 my client the nature of the charges against her and have
22 discussed with her that she will be sentenced under the United
23 States Sentencing Guidelines.  I further acknowledge that I have
24 discussed with her the consequences of the appeal waivers.
25 ///
26 ///
27 ///
28 ///

16

1    To my knowledge, her decision to enter into this plea
2 agreement and to waive appeal and collateral attack, is an
3 informed and voluntary one.   I concur in my client's decision to
4 plead guilty as set forth in this written Plea Agreement.
5 DATED:    2/17/06
                                    PETER KMETO
6                                   Attorney for Defendant
                                    IRENE HUNT
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17

1

## Exhibit A

2      On or about July 31, 1991, the defendant IRENE HUNT flew
3 from the Sacramento airport, located in the State and Eastern
4 District of California, to Fort Worth, State and Northern
5 District of Texas.  With her was her 7-year old son identified
6 as Victim 3.  HUNT and Victim 3 had lived in Sacramento with
7 the rest of Hunt's children and her partner, Allen Harrod.
8 Witnesses, including Victim 3, would testify that HUNT was flying
9 Victim 3 to Texas so that he could live with the family of
10 Michael and Juliette Labrecque who were friends of Allen Harrod.
11 The witnesses would testify that Victim 3 was to be homeschooled
12 by the Labrecques.

13      According to Victim 3, defendant HUNT brought with them to
14 Texas, the family Polaroid camera.  One day, shortly after they
15 arrived at the Labrecque home, IRENE HUNT told her son to come
16 upstairs with her.  She told him to undress and go into Juliette
17 Labrecque's room.  He would testify that after he undressed, he
18 went into Juliette Labrecque's bedroom where he found Juliette
19 Labrecque who was also nude.  He said his mother then told him
20 and Juliette to get into sexual poses.  When he did so, IRENE
21 HUNT took sexually explicit photographs of the two.  Victim 3
22 would testify that Juliette Labrecque took his penis and placed
23 it inside of her.  He would testify that they assumed the
24 "missionary position, " and the "doggy position," and a "standing
25 up" position and simulated sexual intercourse in each position.
26 He said that his mother IRENE told him what positions to get
27 into.  He would also testify that after IRENE HUNT was done
28 taking photographs, she told him to get dressed and not to tell

18

1  anyone.   Victim 3 would testify that when he went downstairs,
2  Michael Labrecque was sitting on the couch and asked him "If he
3  had had fun."

4       According to witnesses, including his sister and brother and
5  two of the Labrecque girls, Victim 3 stayed with the Labrecques,
6  in their care after IRENE HUNT returned to Sacramento, a little
7  less than a  month after she had arrived with Victim 3.   Entries
8  from the journals prepared by Michael and Juliette Labreceque
9  confirm that HUNT returned to Sacramento on August 21, 1991.
10 Accompanying her on the plane to Sacramento were the Labrecque's
11 oldest daughter "A", and a baby who they called "Zero."   "A" was
12 about 9 years old at the time of her first trip to Sacramento.

13      Witnesses would testify that the photographing of sexual
14 encounters between Allen Harrod and the children he molested was
15 a common occurrence and that IRENE HUNT was frequently the person
16 taking the photographs.   Witnesses would also testify that when
17 sexually explicit photographs were taken, IRENE HUNT used the
18 Polaroid camera that belonged to the family.

19

20

21

22

23

24

25

26

27

28

**19**