McGREGOR W. SCOTT
United States Attorney
LAUREL. D. WHITE
ELLEN V. ENDRIZZI
Assistant U.S. Attorneys
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALLEN HARROD, aka Isaac,<br>MICHAEL LABRECQUE, aka Joseph,<br>and JULIETTE LABRECQUE, aka<br>Mary,<br><br>　　　　Defendants. | NO. CR. S. 03-384-WBS<br><br>**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT JULIETTE LABRECQUE'S MOTION IN LIMINE**<br><br>Hearing Date: April 19, 2006<br>Trial Date:   April 25, 2006<br>Time:         9:00 a.m.<br>Court: Hon. William B. Shubb |

　　　　The defendants brutalized "J" Harrod.  As a little boy he was battered, beaten, and shattered.  Now, Defendant Juliette Labrecque claims that the physical abuse she inflicted on "J" is irrelevant.  The Court should deny her motion outright.

　　　　"J" Harrod is Victim 3 in the Second Superseding Indictment. Defendant Juliette Labrecque is charged in Count One with aiding and abetting the transportation of "J" from California to Texas for the purpose of criminal sexual activity, a violation of 18 U.S.C. § 2423(a).  In Count Three, Defendant Juliette Labrecque is charged with obtaining custody and control of "J" with the knowledge that as a consequence of obtaining such custody, "J"

1  would be photographed engaging in sexually explicit conduct, a
2  violation of 18 U.S.C. § 2251A(b).
3      Juliette Labrecque argues that the Court should not admit
4  testimony that she repeatedly lashed "J" with a leather belt and
5  that she had hit "J" with a cup she hurled at him, because the
6  "incident[s]" are not relevant to the charges alleged against
7  her.  See Def.'s Mot. at 3.
8      The government strongly disagrees, and believes that the
9  evidence of Juliette Labrecque's physical abuse of "J" is
10 entirely relevant.  Evidence of the physical beatings are
11 necessary to demonstrate her opportunity and the context in which
12 the charged crimes occurred, as well as to help explain why "J"
13 did not report the abuse and initially denied being a victim to
14 such horrors.
15     The foundation for admissibility under Rule 404(b) is
16 governed by Huddleston v. United States, 485 U.S. 681 (1988).  In
17 Huddleston, the Supreme Court held that similar "other acts" are
18 admissible, if, using a preponderance of the evidence standard,
19 there is evidence to support a jury's finding that the defendant
20 committed the similar act, and that the other act is probative of
21 a material issue other than the defendant's character.  Id. at
22 689.  The Supreme Court also held that no preliminary inquiry
23 under Federal Rule of Evidence 104(a) is necessary.  Id.  In
24 short, evidence of other acts is admissible so long as it can be
25 offered for a permissible use and it passes a Rule 403 balancing
26 test.
27     In the Ninth Circuit,
28          to be probative of something other than

2

>criminal propensity, the prior bad act evidence must: (1) prove a material element of the crime currently charged; (2) show similarity between the past and charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time.

United States v. Johnson, 132 F.3d 1279, 1282 (9th Cir. 1997). Rule 404(b) is a rule of inclusion, and as such, "[e]vidence should be excluded 'only when it provides nothing but the defendant's criminal propensities.'" United States v. Tsinnijinnie, 91 F.3d 1285, 1288 (9th Cir. 1996) (quoting United States v. Hadley, 918 F.2d 848, 850 (9th Cir. 1990).

The Ninth Circuit has affirmed a district court's decision to admit physical abuse evidence under Rule 404(b) in cases charging sexual abuse and molestation. Tsinnijinnie, 91 F.3d at 1288-89; see also United States v. Garcia, 148 Fed. Appx. 594, 595-96 (9th Cir. 2005) (unpublished) ("The evidence of physical abuse was properly admitted under United States v. Tsinnijinnie to show why the girls did not report the [sexual] abuse right away. The uncharged acts of sexual abuse were also properly admitted because they tended to show opportunity, intent, knowledge, and absence of mistake or accident."); United States v. Johnson, 26 Fed. Appx. 624, 625 (9th Cir. 2001) (unpublished) ("[The other bad act evidence] showed that Johnson lied to an impressionable young child after abusing her, threatened to harm her, beat her when she did not submit, and bribed [the victim's sister] to remain quiet ... [T]he evidence was highly relevant and while undeniably prejudicial, not unfairly so.").

In Tsinnijinnie, the Ninth Circuit affirmed the district court's decision to admit evidence that the defendant had

frequently touched and rubbed the "girl's private area" and that he had struck her on separate occasions with his hands, a belt, and a rake.  91 F.3d at 1288.  The government in Tsinnijinnie offered the evidence "to demonstrate opportunity and the context in which the charged crimes occurred, and to help explain why the victim did not report the abuse, or why she submitted to it quietly."  Id.  The Ninth Circuit held that the other bad acts evidence met the Rule 404(b) test and that it had probative value under Rule 403.  Id. at 1288-89.  Additionally, the circuit court wrote, "[T]he evidence of prior [physical abuse] demonstrates how a child could be afraid enough to submit to such actions quietly ...."  Id. at 1289 (citing United States v. Winters, 729 F.2d 602 (9th Cir. 1984) (evidence of beatings and rapes of other victims was admissible under Rule 404(b) in a Mann Act prosecution to show modus operandi, motive and intent, and to explain victims' failure to escape and call for help)).

Likewise, in a similar case, the Fourth Circuit affirmed the district court's admission of evidence of the defendant's physical abuse of the minor female victim and her family, which, among other things, included:  daily whippings with a belt, hickory stick or the defendant's hands; knocking the victim's seven year-old brother off the porch with a two-by-four; and disciplining the children by making them eat hot peppers.  United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995).

The court held that the evidence was relevant and sufficiently related to the charged offense, sexual abuse of a minor who had not reached age twelve, 18 U.S.C. § 2241(c).  Id. at 1465.  Finding that the evidence of the beatings provided a

4

"cogent explanation" for the victim's failure to report the abuse for almost eighteen months, the court went on to note that the "evidence of the beating makes it more probable that [the victim] failed to report the sexual abuse not because it never took place, but because of her fear of retribution. Thus, admission of the evidence is relevant to the issue of Power's guilt." Powers, 59 F.3d at 1465.

As part of an in-depth discussion of the 404(b) factors and the probative value of the evidence of physical violence, the court held that "the timing of the beatings shows that they constituted yet another expression of the brutality with which Powers dominated [the victim] and her family, creating an environment conducive to the further violence of rape."[1] Id. at 1466.

Like the Ninth Circuit, the Fourth Circuit has permitted Rule 404(b) evidence "to show the context of the crime in many circumstances, often simply to complete the story of the offense." Id. (collecting cases across the circuits). In Powers, "the evidence of [the defendant's] complete control over his family explains the [victim's] belief that, so long as Powers lived with the family it would be futile for [the victim] to report the assaults to her mother who would not have been able to protect her." Id. at 1467. Moreover, the Fourth Circuit noted that, therefore, "having seen the entire context of the crime,

---

[1] The dissent in Powers argues that erroneous limiting and jury instructions, the fact that some of the beatings occurred two years before the charged offenses, and the fact that the case "turned on" the testimony of the victim and the defendant bars the use of the bad acts evidence. 59 F.3d at 1475-78.

the jury could have found more credible [the victim's] inability to reject Powers' advances and her explanation that she only told of the assaults when she could no longer face the fear and anxiety of being molested again." Id.

In this case, the government seeks to offer significant 404(b) evidence against all of the defendants in order to present the jury with a complete picture of the horrors that Allen Harrod and Michael and Juliette Labrecque inflicted on their child victims. See Gov't's Trial Brief at 31-47. Moreover, as the defense will attempt to undermine the credibility of the victim witnesses, the 404(b) evidence provides further and ample support of their testimony. Therefore, the whippings and other abuse that Juliette Labrecque rained down on young "J" Harrod are relevant to the state of fear and oppression the defendants imposed over all of the children. As the discussion below indicates, Juliette Labrecque's physical abuse of "J" is relevant, not unfairly prejudicial, and related to the crimes charged against her.

Contrary to the defendant's motion, the physical abuse "J" Harrod suffered at Juliette Labrecque's hand is material to the crimes charged against her. Juliette and her co-defendants sought to create a climate of physical and mental domination over the children. This state of fear allowed the defendants to overpower the children, sexually abuse them repeatedly, and quash any ability the children had to resist. Surely, seven year-old "J", after Juliette had beaten him with a belt during "home schooling" sessions, would have submitted quietly to Juliette's sexual abuse and the subsequent photographing. One can only

imagine the potential reprisal that would have awaited him if he had resisted.  If a belt was used for schooling punishments, what wrath would "J" incur if he had tried to prevent Juliette from inserting his penis into her adult vagina?  The domination Juliette achieved through the physical abuse was key to her intent to use that control to force her victim to submit to the sexually explicit acts that were photographed.

Additionally, the violence of the physical abuse is similar to the violence of the sexual abuse.  This connection links the past and charged conduct for purposes of the Rule 404(b) analysis.  While the physical beatings may have caused more immediate pain, the emotional scarring of the sexual abuse has done far more lasting damage.  In the Labrecque house in Texas, as in Harrod's California residence, physical abuse was acceptable, as sexual abuse was "acceptable" and required.  The government will present testimony that Michael Labrecque also physically abused "J", once hitting him with a two-by-four, as the Powers defendant did, deprived "J" of food and water, and often handcuffed "J" to his bed.  See, e.g., Gov't Trial Brief at 16-19.  Juliette Labrecque readily admits that she follows the lead of Michael Labrecque and Allen Harrod, and their conduct included physical as well as sexual abuse of their victims.  It is clear, then, that Juliette Labrecque's physical beatings of "J" are connected and similar to the sexual abuse she inflicted on him.

The third and fourth elements of the 404(b) analysis can be addressed quickly.  With respect to remoteness, Juliette Labrecque's physical abuse of "J" occurred contemporaneously with

her assuming custody of him in 1991, so the bad acts are not stale.  The testimony regarding "J"'s physical abuse is based on sufficient evidence, given that "J", Irene Harrod, and others will testify to the suffering he incurred at the hands of Juliette.

Finally, the lashings are relevant, and not unfairly prejudicial, especially considering the vile crimes charged.  As described above, the physical abuse allowed Juliette Labrecque to dominate little, seven year-old "J" Harrod.  He was so overcome, he will testify, that to him, Juliette seemed large, even though by normal standards, Juliette herself is diminutive.  The culture of submission instilled into all of the children by the repeated abuse is relevant to the jury's understanding of why the victims were reluctant at first to admit that they had been brutalized.  This is as true for "J" Harrod as it is for "A" Harrod and "S", "T", and "K" Labrecque.  The physical abuse coupled with the intended sexual molestation created an oppressive environment.

The Court should admit evidence of Juliette Labrecque's physical abuse of "J" in order to offer the jury a complete picture of the crimes and to allow "J" a voice after so many years of torturous silence.

DATED:  April 17, 2006

                                      Respectfully submitted,

                                      McGREGOR W. SCOTT
                                      United States Attorney

                              By:  /s/ Ellen V. Endrizzi
                                      LAUREL D. WHITE
                                      ELLEN V. ENDRIZZI
                                      Assistant U.S. Attorneys