McGREGOR W. SCOTT
United States Attorney
LAUREL. D. WHITE
ELLEN V. ENDRIZZI
Assistant U.S. Attorneys
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>ALLEN HARROD, aka Isaac,<br>MICHAEL LABRECQUE, aka Joseph,<br>and JULIETTE LABRECQUE, aka<br>Mary,<br><br>              Defendants. | NO. CR. S. 03-384-WBS<br><br>**GOVERNMENT'S MEMORANDUM<br>IN OPPOSITION TO<br>DEFENDANT MICHAEL LABRECQUE'S<br>MOTION IN LIMINE**<br><br>Hearing Date: April 19, 2006<br>Trial Date:   April 25, 2006<br>Time:              9:00 a.m.<br>Court: Hon. William B. Shubb |

I.     INTRODUCTION

       A.     Defendant's Motion

   Defendant Michael Labrecque sacrificed his daughters to appease his own and Allen Harrod's sexual appetites.  Theirs is a gruesome story of religious perversion, motivated by a selfish need for deviant sexual gratification.  Now, faced with trial and evidence that will support his conviction, Defendant Michael Labrecque seeks to preclude the admission of certain testimony as irrelevant or unfairly prejudicial.  In this opposition, the government will address three of the defendant's evidentiary issues:  1) pre-1991 conduct; 2) sexual activity among consenting adults; and 3) physical discipline and physical abuse inflicted

on the child victims by the defendant.[1]  The defendant's motion to preclude the evidence on these topics should be denied because the testimony is relevant, it is not unfairly prejudicial, and it will assist the jurors in their fact finding rather than confusing or misleading them.

B.   <u>Relevance</u>

Under Federal Rule of Evidence 401, relevant evidence is that "evidence having any tendency to make the existence **of any fact that is of consequence to the determination of the action** more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401 (emphasis added).  A two-step process is used to determine if evidence is relevant: 1) does the evidence make the existence of some fact more probable or less probable? and 2) is the fact to which the evidence is directed a fact "of consequence to the determination of the action?"

The standard of probability is a low threshold for relevance, that is, whether the evidence makes a fact more or less probable than it would be without the evidence.  As the Seventh Circuit described it, **relevant evidence "need only be a brick, not a wall."**  <u>United States v. Pollard</u>, 790 F.2d 1309, 1312 (7th Cir. 1986) (evidence need not be conclusive proof on the issue; even if the proposition is still improbable after the

---

[1]   The defendant also seeks to bar admission of certain other evidence regarding:  1) the involvement of Child Protective Services and/or the termination of parental rights; 2) Michael Labrecque's striking his wife and co-defendant, Juliette Labrecque, in 1990; and 3) Michael Labrecque's 1990 signed confession that he attempted to murder a work colleague in 1989.  <u>See</u> Def.'s Mot. at 3 and 11.  Unless a defendant "opens the door" with respect to these events, the government will not seek to introduce such evidence.

2

admission of the evidence, the evidence should still be let in) (emphasis added), <u>overruled on other grounds by</u> <u>United States v. Sblendorio</u>, 830 F.2d 1382 (7th Cir. 1987).

A fact is "of consequence," and evidence directed to that fact should be admitted, if the exclusion of the fact would leave a "chronological and conceptual void" in the case. <u>United States v. Vretta</u>, 790 F.2d 651, 655 (7th Cir. 1986). In this case, evidence regarding the events prior to the first offense, consensual adult sex among the defendants and others, and Michael Labrecque's physical abuse of the victims are all relevant to the determination of the action. The jury needs to hear about certain events in order to understand and identify the defendants' knowledge and intent with respect to the charged crimes, and the jury needs to hear evidence regarding the overarching emphasis on sex in the home and the physical abuse inflicted on the victims to understand why the children were not initially forthcoming about the abuse when questioned by law enforcement. Without evidence regarding the iron-fisted control the defendants exerted over the victims, the jury will be left with a conceptual void that would negatively affect their perception of the witnesses' credibility.

    C.   <u>The Extraordinary Remedy of Rule 403</u>

Rule 403 reads,

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. "Because Rule 403 requires the exclusion of

relevant evidence, it is an extraordinary measure that should be used sparingly." United States v. Morris, 79 F.3d 409, 412 (5th Cir. 1996); see also United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir. 1983) ("Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.").

Rule 403 balancing involves two steps: 1) assessing the probative value of the proffered evidence; and 2) balancing that probative weight against the three "dangers" or three "considerations" in the rule.

The trial court's assessment of the probative value of the evidence is a relative measurement viewed in the context of the issues and the entire evidence of the case.

When examining the nature of any potential Rule 403 prejudice, the trial court is mindful that the Rule requires that excluded evidence is "unfairly prejudicial". To be unfair, the evidence must suggest a decision by the jury on an improper basis. A criminal trial always sets forth prejudicial evidence, but it is only that evidence that is so unfair as to prevent a just trial that should be excluded. As the D.C. Circuit explained,

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury ... It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of unfair prejudice," and gives the court discretion to exclude evidence only if that danger "substantially

outweigh[s]" the evidence's probative value. United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998).

In this case, the crimes charged are heinous and the evidence is powerful. The evidence the government seeks to present is relevant to the jury's determination of the issues and it is not unfairly prejudicial. In truth, the crimes charged are the most prejudicial acts of the case. No issue or testimony objected to by the defendants in their motions in limine casts a darker shadow than the nine counts of the Second Superseding Indictment. The extraordinary remedy of Rule 403 exclusion should not be imposed.

## II. EVENTS PRECEDING THE CONDUCT CHARGED IN THE SECOND SUPERSEDING INDICTMENT SHOULD BE ADMITTED

Defendant Labrecque asks the Court to bar evidence of events that occurred outside of the ten-year time period alleged in the indictment. See Def.'s Mot. at 2. While the government has stated above that it will not seek the admission of any evidence relating to the events identified in the defendant's motion unless the defendant opens the door to that testimony, see supra at 2 n.1, it will not concede that all events prior to July 1, 1991, the earliest date in the indictment, should be barred. To bar such evidence outright would be akin to skipping the first few chapters of a novel. The jury should not be burdened by any "chronological or conceptual voids" that impact its evaluation of the evidence in the case.

Pre-1991 evidence is necessary to establish the context for the sexual abuse. For example, evidence regarding the creation of the "religion" and its tenets is important to identifying the

5

defendants' motives, plans, and intentions with respect to sexual acts.  The pre-1991 evidence and testimony, through Irene Hunt and Laurie Thomas, will support the government's contention that the defendants regularly photographed sexual activity.  If the Court were to bar this evidence, it would be virtually impossible to demonstrate that Juliette and Michael Labrecque assumed custody of "J" Harrod knowing that his custody was, in part, for the purpose of photographing "J" engaging in sexually explicit conduct.

In its Trial Brief, the government sets forth the testimony and evidence it wants to present at trial.  Some of those events are prior to July 1, 1991 and the government has explained the relevance and necessity of that evidence.  As Michael Labrecque has not specifically identified any of that evidence he wishes to exclude, the government asks that his motion on this point be denied.

III. TESTIMONY REGARDING THE SEXUAL PRACTICES OF THE ADULTS IN THE LABRECQUE AND HARROD HOUSEHOLDS SHOULD BE ADMITTED

This case is all about sex – oral sex, vaginal sex, anal sex, simulated sex, sex between parent and child, sex between adults and children, sex between unwilling children, and sex between consenting adults.  This case is all about sex.  Except that it isn't.

This case is about power and helplessness, dominance and submission, fear, brutality, and pain.  The charges, they are about the criminal sexual abuse of children, but to render judgment on those charges, the jury needs to understand the events surrounding them, including the consensual adult sex

between Allen Harrod, Michael Labrecque, Juliette Labrecque, Irene Hunt, and Angela Labrecque.

The defendants created home environments permeated by sex. The consensual sex between the adults is directly relevant to each defendant's knowledge and intent underlying the criminal charges. For instance, if their actions are focused on sexual gratification and their "religion" demands the written record of the sexual acts, then it is futile for the defendants to deny that they did not have the knowledge and intent underlying the criminal charges regarding the transportation and custody of the children for sexual activity. There will be testimony that adults observed and photographed sex acts between consenting adults and also between adults and children. There will be testimony that the children were forced to watch adults have sex and the children were forced to drink and lick ejaculate from the adults. The children were witnesses to consensual adult sex and would later become the victims of those adults. Testimony about the frequent and public adult sex is necessary to understand the later use of the children to commit those sex acts. Moreover, evidence of the adults swapping sex partners and Juliette Labrecque's bearing Allen Harrod two children, while still married to Michael Labrecque, is highly relevant to dispute Defendant Michael Labreque's denials that he did not know anything about his wife's sexual relationship with Allen Harrod and why his daughters were sent to Allen Harrod for their "presentations".

Additionally, the evidence regarding Michael Labrecque's and Allen Harrod's growing dissatisfaction with adult sex indicates

7

their intent to fulfill their sexual needs by using young girls. For example, Allen Harrod had a sexual relationship with his wife, Illa; however, at the same time, he was molesting his two yong daughters and step-daughter.  When the girls, and conceivably Illa, grew too old, Allen Harrod then cast them and Illa aside for Illa's younger sister, Irene Hunt, who would practice his sex-focused "religion".  Allen Harrod, still not satisfied, inserted himself into the sexual relationship between Michael and his youngish wife, Juliette Labrecque, and Juliette ultimately bore Allen Harrod two children.  During this time, Allen Harrod also continually possessed and used the teenaged Labrecque daughters as sex victims.  The sex with the Labrecque girls started with the oldest, Angela, who would bear Allen Harrod a child, and suffered down the line to "T", "S" and "K" Labrecque.  Allen Harrod's own daughter with Irene, "A" Harrod, also was subject to her father's sexual appetite for young girls.

    Michael Labrecque, too, was more interested in young flesh than that of his wife.  This predilection and preference confirms his intent to visit Sacramento to abuse young "A" Harrod, Count Nine, and his knowledge and intent with respect to sending his daughters to Allen Harrod.  Michael Labrecque, in a journal entry submitted to Allen Harrod describes sex with his wife, Juliette, as similar to driving an "old Chevy," while sex with his daughters was more akin to driving a sports car.  Without evidence of the dissatisfaction of Michael Labrecque and Allen Harrod with their consensual adult sex partners, the jury would not have the evidence to evaluate the defendants' knowledge and intent with respect to the sex acts inflicted on the children.

Finally, the evidence of the consensual sex among the adults and ultimately the sexual abuse of the children was about exerting control.  This control is relevant because it kept the defendants' victims from initially acknowledging their abuse and admitting that they had been molested.  Allen Harrod and Michael Labrecque exerted control over their wives and children by linking their self-worth to performing sex acts.  According to Harrod and Michael Labrecque, women were worthless vessels that had no value unless and until they were filled with Harrod and Labrecque's "seed" or sperm.  Irene Hunt will testify as to her sexual relationship with Allen Harrod and describe the complete dominance he held over her and the competition he fostered for his "seed" between the adult and juvenile females in the house. This competition for the only attention the women could get from Allen Harrod, sexual attention, explains why the young victims were reluctant to betray Allen Harrod and tell law enforcement about the molestation.

The evidence of the adult consensual sex creates the context for the sexual molestation.  It clarifies the defendants' intent and knowledge and it provides and explanation for the victims' hesitance to implicate the defendants.  The jury will not be confused by the distinction between the adult sex and the child molestations, and it is not unfairly prejudicial in light of the charged crimes.

IV. EVIDENCE THAT MICHAEL LABRECQUE
    <u>PHYSICALLY ABUSED THE CHILD VICTIMS SHOULD BE ADMITTED</u>

The physical abuse of the victims at the hand of Michael Labrecque, and Juliette Labrecque and Allen Harrod, is highly

9

relevant to demonstrate why the victims were reluctant to discuss the sexual molestation with law enforcement officers in California and Texas. The children were beaten and threatened into submission and sought safety in their silence. The jury needs this evidence to evaluate the witnesses' testimony and credibility.

While "J" Harrod was in Michael and Juliette Labrecque's custody in Texas, Michael Labrecque beat "J" regularly, and even slammed him with a two-by-four. Michael Labrecque deprived "J" of food and water and often handcuffed "J" to his bed. Juliette Labrecque repeatedly whipped "J" Harrod with a belt and hit him with a thrown cup. There is no purpose for such violence other than to create a compliant and terrorized child – a child who would be too afraid to tell any adults about the rampant sexual abuse he experienced and witnessed.

Similarly, in California, "A" Harrod will testify that her father, Allen Harrod, warned her that if she told anyone about the sex going on in the house – sex with the Labrecque girls and her own sexual molestation – "the family would be in danger and [Harrod] would hunt ["A"] down and kill her." "A" will tell the jury that Allen Harrod made this threat every time he had sex with her. On the occasion when "A" attempted to run away, Allen Harrod tracked her down and beat her with a paddle. Domination was de rigueur in the Harrod household, and the physical abuse was another means of enforcing compliance and silence.

The physical abuse inflicted by Michael Labrecque and his co-defendants is relevant and not unfairly prejudicial.
///

V.   CONCLUSION

    For the reasons stated above, Defendant Michael Labrecque's motions in limine should be denied.

DATED:   April 18, 2006

                                      Respectfully submitted,

                                      McGREGOR W. SCOTT
                                      United States Attorney

                              By:   /s/ Ellen V. Endrizzi
                                  LAUREL D. WHITE
                                  ELLEN V. ENDRIZZI
                                  Assistant U.S. Attorneys